IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:13CR143 |
| vs. | |
| APRIL L. ROLENC, | FINDINGS AND RECOMMENDATION |
| Defendant. | |

This matter is before the court on the motion to suppress filed by defendant April L. Rolenc (Rolenc) (Filing No. 20). Rolenc is charged in the Indictment with the distribution of methamphetamine on three occasions in February 2012 (Counts I-III), in violation of 21 U.S.C. § 841(a)(1) and (b)(1), and the April 8, 2013, possession with intent to distribute methamphetamine (Count IV), in violation of 21 U.S.C. § 841(a)(1). **See** Filing No. 1. There is also a forfeiture allegation seeking the forfeiture of $15,707.00 in U.S. currency seized from Rolenc on April 8, 2013. *Id.* Rolenc seeks to suppress evidence seized and statements made during a traffic stop, in Fremont, Nebraska, on April 8, 2013, by officers of the Dodge County Sheriff's Office (DCSO).

The court held an evidentiary hearing on Rolenc's motion on September 5, 2013. Rolenc was present for the hearing along with her counsel, Federal Public Defender David R. Stickman. The United States was represented by Assistant U.S. Attorney Thomas J. Kangior. During the hearing, the court heard the testimony of Fremont Police Department (FPD) Officer Matthew Hultquist (Officer Hultquist) and DCSO Deputy Craig Harbaugh (Deputy Harbaugh). With prior leave of court, on September 12, 2013, the United States filed an evidentiary supplement to the record containing an inventory report. **See** Filing No. 30. A transcript of the hearing (TR.) was prepared and filed on September 17, 2013. **See** Fling No. 31.

**FINDINGS OF FACT**

Officer Hultquist has been employed with the FPD since March 1996, and he is currently assigned to the III Corps Drug Task Force (TR. 3). In this assignment, Officer

Hultquist investigates violent crimes and drug violations (TR. 3). In 2012, Officer Hultquist investigated illegal drug activities involving Rolenc (TR. 3). Officer Hultquist received information from a confidential informant (CI) that Rolenc was selling methamphetamine (TR. 3). The CI identified a picture of Rolenc from a department of motor vehicle's photograph (TR. 3). Officer Hultquist and the CI conducted three controlled purchases of methamphetamine from Rolenc, two on February 23, 2012, and one on February 27, 2012 (TR. 4). On all three occasions, the purchases took place in Fremont, Nebraska (TR. 4). The CI wore a recording device and purchased more than seven grams of substances, which field tested positive for methamphetamine (TR. 4-5). The Nebraska State Patrol Crime Lab also tested the substances as positive for methamphetamine (TR. 5). Officer Hultquist observed the CI make the purchases from Rolenc (TR. 5, 19, 24-25). After these purchases, the investigation "went stale" because Officer Hultquist was not able to locate Rolenc (TR. 5). In late 2012 or early 2013, officers received information from an individual in jail, who stated Rolenc was selling large amounts of methamphetamine, using rental cars, and carrying large amounts of money (TR. 6).

On approximately, April 1, 2013, Officer Hultquist and others set up surveillance at a farm in Dodge County, Nebraska, where they learned Rolenc lived with her husband (TR. 7). The officers saw Rolenc driving a 2013 red Ford Focus with Omaha, Nebraska, license plates (TR. 7, 27). On April 8, 2013, officers saw the red Ford Focus leave the farm (TR. 7). Officers followed the vehicle to the Sleep Inn, a hotel located in Freemont, Dodge County, Nebraska (TR. 7). The officers were in several unmarked vehicles and wearing plain clothes (TR. 8). Officer Hultquist drove by himself and kept in contact with the other officers by using a telephone (TR. 8). Officers observed Rolenc leave the Sleep Inn with Gia Middleton (Middleton), also known as Gia Novotny, and Greg French (French) (TR. 7-8). Rolenc rode as a passenger in French's vehicle and Middleton drove the red Ford Focus less than one block away to Sapp Brothers, a gas station (TR. 8).

Later that day, the officers located the red Ford Focus parked and empty at a gas pump at the Sapp Brothers (TR. 9). The officers did not see Rolenc, but observed Middleton with a child in the Sapp Brothers (TR. 11). The officers, who had prior

contact with Middleton, conducted a background check on Middleton and discovered she did not have any warrants but her driver's license had been suspended by the State of Nebraska (TR. 11-12, 22-23).  The officers contacted Deputy Harbaugh, who was nearby working in uniform as a deputy and driving a marked cruiser, to be prepared to conduct a traffic stop if Middleton drove the red Ford Focus (TR. 12, 28).  Deputy Harbaugh has been employed with the DCSO as a deputy sheriff in the Fremont, Nebraska, office for sixteen years (TR. 26).  Deputy Harbaugh is currently assigned to the road patrol unit conducting basic law enforcement functions, such as traffic stops (TR. 26).  Deputy Harbaugh also assists narcotics detectives with their investigations (TR. 26-27).

     Middleton left the gas station and entered the red Ford Focus' driver seat (TR. 12).  Children entered the back seat (TR. 12).  As Middleton prepared to leave, Rolenc exited the gas station carrying a large black purse and entered the front passenger seat of the red Ford Focus (TR. 12).  Officer Hultquist observed Middleton drive the vehicle away (TR. 12-13).  At approximately 7:00 p.m., the officers alerted Deputy Harbaugh the red Ford Focus appeared to be heading north out of the parking lot onto Highway 77 (TR. 13).  The officers told Deputy Harbaugh Middleton was driving with a suspended license and the officers wanted Rolenc detained for questioning in connection with a drug investigation (TR. 13).

     Deputy Harbaugh knew Middleton because he had numerous contacts with her prior to April 8, 2012, during his career (TR. 28).  After Deputy Harbaugh was told to watch for Middleton driving the red Ford Focus he contacted the DCSO dispatch to check on Middleton's driver's license (TR. 29).  The DCSO dispatch confirmed Middleton's driver's license had been suspended (TR. 29-30).  Deputy Harbaugh parked in a church parking lot adjacent to the gas station and observed Middleton driving the red Ford Focus away from the gas station toward Highway 77 (TR. 28-30).

     Officer Hultquist observed Middleton drive the red Ford Focus northbound on Highway 77 followed by Deputy Harbaugh who pulled the red Ford Focus over approximately a quarter mile away (TR. 13-14).  Officer Hultquist stopped a quarter mile north of the traffic stop to observe without allowing Rolenc to see the unmarked vehicle

3

(TR. 14). Officer Hultquist could see, but could not hear the events of the traffic stop (TR. 14-15).

After vehicles stopped on Highway 77, Deputy Harbaugh initially made contact with the driver, Middleton (TR. 30-31). Deputy Harbaugh saw an adult female passenger who he did not know prior to the stop and three minor children in the red Ford Focus (TR. 30). Deputy Harbaugh identified himself and asked the driver for identification (TR. 31). Middleton provided a Kentucky identification card and Deputy Harbaugh determined Middleton's Kentucky driver's license had also been suspended (TR. 31). Deputy Harbaugh placed Middleton under arrest and moved her to the back seat of his cruiser (TR. 31). Another deputy arrived to provide assistance (TR. 31-32).

Deputy Harbaugh called Officer Hultquist to ask what he should do with Rolenc (TR. 14-15). Officer Hultquist told Deputy Harbaugh to detain or arrest Rolenc because she had been involved in three methamphetamine deliveries (TR. 15, 32). Based on the information from Officer Hultquist, Deputy Harbaugh decided to arrest Rolenc and transport her to the FPD office for an interview (TR. 15, 32). Deputy Harbaugh asked Rolenc to exit the red Ford Focus and she did (TR. 33). Rolenc stood between the Ford and the cruiser, facing away from the Ford (TR. 33). For officer safety reasons, Deputy Harbaugh asked Rolenc if she had any weapons, drugs, or illegal contraband on her person (TR. 34). Rolenc responded to the question with a big sigh, looked at Deputy Harbaugh, then said, "not on me" and looked back at the red Ford Focus (TR. 34-35). Deputy Harbaugh looked at the other deputy and said, "the drugs must be in the vehicle" (TR. 35). Rolenc immediately stated, "Deputy Harbaugh, I have a small amount of drugs in my purse in the front seat. Can I get them for you?" (TR. 35). Rolenc also stated there was a large amount of cash in the purse, which was hers (TR. 36). Deputy Harbaugh explained Rolenc would not be allowed back into the vehicle and she was being detained as part of a drug investigation (TR. 35-36). Rolenc asked if she could take the children to her residence and be questioned there or return to Sapp Brothers because she was not feeling well (TR. 36, 47). Deputy Harbaugh assured Rolenc the children would be taken care of, but she would be taken to the FPD office (TR. 36, 47). Deputy Harbaugh did a quick pat down of Rolenc, placed her in handcuffs, and placed her in the back seat of the cruiser (TR. 37). Deputy Harbaugh

did not advise Rolenc of her rights under *Miranda* (TR. 36). The children were released to Rolenc's mother (TR. 38).

Because no other adults were present to take custody of the red Ford Focus, the deputies conducted an inventory search at the location of the traffic stop prior to impounding it (TR. 38; Filing No. 30 - Inventory Report). Inside the red Ford Focus, Deputy Harbaugh located the black purse and placed it on the hood of his cruiser (TR. 38). Deputy Harbaugh searched the purse's contents and found large bundles of cash and what he believed to be methamphetamine (TR. 38).

Rolenc was transported to the FPD office (TR. 39-40). The deputies advised Officer Hultquist, they discovered methamphetamine and a large amount of currency in the black purse (TR. 16). Officer Hultquist advised Rolenc of her rights under *Miranda* and she gave a statement (TR. 16).

## LEGAL ANALYSIS

### A.   Traffic Stop

Rolenc argues Deputy Harbaugh lacked probably cause, or even reasonable suspicion, to stop the red Ford Focus she was riding in on April 8, 2013. **See** Filing No. 21 - Brief p. 2-6. Specifically, Rolenc argues Deputy Harbaugh lacked the specific details or personal knowledge of either a traffic violation or narcotics trafficking. *Id.*

"The Fourth Amendment permits an investigative stop of a vehicle if officers have a reasonable suspicion the vehicle or its occupants are involved in criminal activity." ***United States v. Hambrick***, 630 F.3d 742, 746 (8th Cir. 2011). Nevertheless, "it is well-settled that any traffic violation provides a police officer with probable cause to stop a vehicle, even if the officer conducted the valid traffic stop as a pretense for investigating other criminal activity." *Id.* A driver driving while her license is suspended creates probable cause for a traffic stop. *Id.*

In this case, the officers involved observed Middleton, who they knew to have a suspended driver's license, driving the red Ford Focus. Officers assigned to the III Corps Drug Task Force identified Middleton and conducted a background check, determining she had a suspended driver's license (TR. 11-12, 22-23). The officers contacted Deputy Harbaugh, who new Middleton and conducted an independent

background check to verify her driver's license status (TR. 12, 28-30). Deputy Harbaugh confirmed Middleton's driver's license had been suspended before he observed her driving the red Ford Focus (TR. 28-30). After Middleton drove the red Ford Focus by Deputy Harbaugh, he conducted the initial traffic stop based on the traffic violation (TR. 28-31). Middleton's conduct, driving with a suspended driver's license, provided Deputy Harbaugh with probable cause to stop the red Ford Focus.

**B.   Detention and Arrest**

Rolenc argues Deputy Harbaugh lacked sufficient legal justification to detain Rolenc at the site of the traffic stop. **See** Filing No. 21 - Brief p. 3-6. Specifically, Rolenc contends the officers, especially Deputy Harbaugh, lacked reasonable suspicion that she was involved in narcotics trafficking operations. *Id.*

The traffic stop provided Deputy Harbaugh the initial authority to temporarily detain Rolenc and Middleton. Deputy Harbaugh arrested Middleton, the driver, and made contact with Rolenc (TR. 15, 32-33). The contact, although never consensual, immediately became a custodial arrest. The Fourth Amendment requires an arrest be made with a valid arrest warrant or that a warrantless arrest be supported by probable cause. **See** U.S. Const. amend. IV.; *Royster v. Nichols*, 698 F.3d 681, 687 (8th Cir. 2012). The government has the burden to prove either a valid arrest warrant or probable cause existed at the time of the arrest. **See** *United States v. Andrews*, 454 F.3d 919, 922 (8th Cir. 2006).

"The Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred." *Florida v. White*, 526 U.S. 559, 565 (1999). "Probable cause exists when, at the time of the arrest, the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested." *United States v. Martinez*, 462 F.3d 903, 908 (8th Cir. 2006); **see also** *Royster v. Nichols*, 698 F.3d 681, 688 (8th Cir. 2012). Therefore, whether probable cause existed for an arrest must be determined at the time of the arrest. Further, "[w]hether probable cause exists is viewed from the standpoint of an objectively

reasonable police officer." *United States v. Smith*, 715 F.3d 1110, 1115 (8th Cir. 2013) (internal quotation omitted).

The court gives law enforcement officers "substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013). This is because "the police possess specialized law enforcement experience and thus may 'draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous.'" *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005). Accordingly, "[w]hether [the officers'] suspicions are reasonable is assessed from the point of view of trained law enforcement officers based on the totality of the circumstances known to the officers at the relevant time." *United States v. Zamora-Lopez*, 685 F.3d 787, 790 (8th Cir. 2012). Moreover, the circumstances known to one officer may be imputed to other officers if they are working together on an investigation and "some degree of communication exists between them." *United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011). Under these circumstances, the officers' "collective knowledge" forms the basis of the acting officer's reasonable suspicion or probable cause. *Id.* at 703-04. An officer may become a member of an investigation team when he is instructed to conduct a traffic stop even if he does not possess "all the relevant collective knowledge of the team." *Id.* at 704.

"Probable cause exists if the totality of the circumstances known to all officers involved at the time of the arrest were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense." *United States v. Thompson*, 533 F.3d 964, 969 (8th Cir. 2008) (internal quotation omitted); see also *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005); *United States v. Cabrera-Reynoso*, 195 F.3d 1029, 1031 (8th Cir. 1999); *United States v. Amaya*, 52 F.3d 172, 174 (8th Cir. 1995) (totality of the circumstances); *United States v. Morgan*, 997 F.2d 433, 435 (8th Cir. 1993) (court may consider collective knowledge). "Arresting officers are not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest." *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013). "A probability or substantial chance of criminal activity, rather than an

actual showing of criminal activity is sufficient." ***United States v. Smith***, 715 F.3d 1110, 1115 (8th Cir. 2013).

Officer Hultquist personally observed Rolenc's involvement in three controlled buys of methamphetamine in February of 2012 (TR. 4-5, 19, 24-25). Generally, an officer's observation of a controlled buy supplies probable cause to arrest a suspect. ***United States v. Webster***, 625 F.3d 439, 443 (8th Cir. 2010); **see also** ***United States v. Baldenegro-Valdez***, 703 F.3d 1117, 1125 (8th Cir. 2013). Rolenc argues the controlled buys in this case happened over one year prior to the arrest, causing any probable cause to go stale. **See** TR. 49. However, the nature of the crime and the information available to the officers suggested an ongoing drug trafficking operation. **See** ***United States v. Pruneda***, 518 F.3d 597, 604 (8th Cir. 2008). Although the officers' investigation into Rolenc went dormant in early 2012, the officers reinitiated surveillance on April 1, 2013, based on an informant's tip that Rolenc was again selling large amounts of methamphetamine, using rental cars, and carrying large amounts of cash (TR. 6-7). The officers observed Rolenc driving the red Ford Focus, then observed Middleton driving the red Ford Focus with Rolenc as a passenger to meet a third party at a hotel (TR. 7-8, 27). The three drove to a gas station in two separate cars (TR. 7-8). Later, the officers saw Middleton drive away from the gas station after Rolenc got into the red Ford Focus with a large black purse (TR. 12). Under the circumstances present, the controlled buys coupled with later informant information and the officer's observations support probable cause to arrest Rolenc on April 8, 2013.

Deputy Harbaugh's actions were based, in part, on his communications with Officer Hultquist and the other officers (TR. 13-15, 32). There is no evidence Deputy Harbaugh was a member of the III Corps Drug Task Force or the team investigating Rolenc prior to April 8, 2013, however Deputy Harbaugh was in communication with the task force officers. The officers apprised Deputy Harbaugh of the circumstances surrounding the traffic stop and Rolenc's involvement in drug trafficking, including her involvement in three previous methamphetamine deliveries. This information and Deputy Harbaugh's association with the investigation made him a member of the team, rather than an officer "who merely happen[ed] to be investigating the same subject." **See** ***Robinson***, 664 F.3d at 703-04. For this reason the collective knowledge doctrine

applies to impute the information held by the other members of the team to Deputy Harbaugh.

In the alternative, the methamphetamine found in Rolenc's black purse and her statements about it supplied probable cause for her arrest. Deputy Harbaugh had independent justification to pat down Rolenc aside from the drug trafficking investigation. The traffic stop of Middleton provided Deputy Harbaugh with the authority to ask Rolenc to step out of the vehicle and whether she was carrying contraband. **See United States v. McCarty**, 612 F.3d 1020, 1025-26 (8th Cir. 2010); **see also United States v. Olivera-Mendez**, 484 F.3d 505, 511 (8th Cir. 2007) (finding no unreasonable seizure occurred during traffic stop based on probable cause when officer asked three questions about drug possession which were unrelated to the traffic stop). Prior to the pat down, Deputy Harbaugh asked if Rolenc had any weapons, drugs, or illegal contraband on her person (TR. 34). Rolenc responded to the question with a big sigh, looked at Deputy Harbaugh, then said, "not on me" and looked back at the red Ford Focus (TR. 34-35). Deputy Harbaugh looked at the other deputy and said, "the drugs must be in the vehicle" (TR. 35). Rolenc immediately stated, "Deputy Harbaugh, I have a small amount of drugs in my purse in the front seat. Can I get them for you?" (TR. 35). When Rolenc admitted the presence of drugs in the purse, the officers had probable cause to search the purse. **See McCarty**, 612 F.3d at 1025 (noting circumstances may suggest "suspicion was reasonably warranted and [officer] was justified in expanding the traffic stop to ask [the suspect] about the presence of drugs in the car"). The results of the search provided probable cause to arrest Rolenc and search the rest of the vehicle. **See id.**; **United States v. Newell**, 596 F.3d 876, 880 (8th Cir. 2010) (noting "[s]eeing evidence of a crime provided probable cause to arrest").

**C.  Statements**

Under the Fifth Amendment, the Self-Incrimination Clause provides, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. IV. "[T]he core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." **United States v. Patane**, 542 U.S. 630, 637 (2004). The touchstone for the admissibility of a

defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278, 285-87 (1936).

It is well settled that a law enforcement official is required to advise an individual of his or her *Miranda* rights before questioning if that individual is in custody. *United States v. Muhlenbruch*, 634 F.3d 987, 995 (8th Cir. 2011). "An individual is in custody [for purposes of *Miranda*] when placed under formal arrest, or when his or her freedom is restricted to a degree akin to formal arrest." *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009). The court will assume for purposes of this analysis Rolenc was in custody. The evidence is clear Deputy Harbaugh did not advise Rolenc of her *Miranda* rights before she made the incriminating statements at issue. The dispute before the court is whether Deputy Harbaugh subjected Rolenc to interrogation inducing her statements. "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." *United States v. Boslau*, 632 F.3d 422, 429 (8th Cir. 2011).

Rolenc's statements including her sighing, denying she had drugs on her, and looking back at the red Ford Focus were not in response to an interrogation and were voluntarily made therefore there is no basis to suppress the statements. "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); see *Pennsylvania v. Muniz*, 496 U.S. 582, 603-04 (1990) (holding communication or instructions necessarily "attendant to" police procedure, such as sobriety tests, not likely to be perceived as calling for any incriminating response). "The question 'What is in your pocket?' [may not be] an investigatory question or otherwise calculated to elicit an incriminating response, but rather a natural and automatic response to the unfolding events during the normal course of an arrest." *United States v. Woods*, 711 F.3d 737, 740-41 (6th Cir. 2013). Deputy Harbaugh's question about whether Rolenc had any weapons, drugs, or illegal contraband on her does not meet the definition of interrogation because it was an inquiry "normally attendant to arrest and custody."

Rolenc's statements about "a small amount of drugs" and the cash in her purse were not in response to any question and were voluntarily made therefore there is no basis to suppress the statements. **See** *Miranda v. Arizona*, 384 U.S. 436, 478 (1966) ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."); **see also** *United States v. Briones*, 390 F.3d 610, 612-13 (8th Cir. 2004) (holding defendant's "blurted out" statement admissible). "*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." *Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir. 1989) (internal quotation omitted). Deputy Harbaugh's statement to another officer about the likely location of drugs, even though based on Rolenc's conduct and denial of drugs on her person, was not reasonably likely to elicit an incriminating response from the suspect. In any event, the location of contraband in Rolenc's purse was inevitable after Rolenc's arrest. Because Rolenc was not subject to interrogation for purposes of *Miranda*, Deputy Harbaugh was not required to advise Rolenc of her *Miranda* rights before asking her about weapons and contraband. Under these circumstances, Rolenc's statements need not be suppressed.

**D.    Black Purse**

Rolenc seeks suppression of all evidence discovered in her black purse found in the passenger compartment of the Ford Focus on April 8, 2013. **See** Filing No. 20 - Motion p. 1-2; TR. 50. Rolenc contends the officers lacked probable cause or other justification to search the black purse. **See** Filing No. 20 - Motion p. 1-2; TR. 50. Furthermore, Rolenc argues the search was the fruit of her illegal detention and questioning. **See** Filing No. 20 - Motion p. 1-2; TR. 50. Specifically, Rolenc argues the vehicle's search, and by extension the purse's search, cannot be justified incident to her arrest because she was arrested outside the vehicle and removed to the police cruiser prior to the search. **See** Filing No. 21 - Brief p. 8-10. As such, Rolenc contends the reasoning in *Arizona v. Gant*, 556 U.S. 332 (2009), precludes a finding the officers permissibly searched the Ford Focus incident to arrest. *Id.* The government argues, under the totality of the circumstances, the officers had probable cause to believe

evidence of a crime was present in the Ford Focus.  **See** Filing No. 25 - Brief p. 7-8.  In the alternative, if the officers lacked probable cause, the government contends the search was a permissible inventory search.  *Id.* at 8.

In *Gant*, the defendant was arrested for driving with a suspended license, handcuffed, and placed in the patrol cruiser.  *Gant*, 556 U.S. at 336.  Officers searched the vehicle incident to the arrest and discovered a gun and cocaine.  *Id.*  The United States Supreme Court held "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  *Id.* at 351.  The holding from *Gant* would require suppression in this case if the search of the vehicle was based only on Middleton's arrest.  The search was not based on Middleton's arrest.

The *Gant* analysis supports the officers' search in this case.  The officers' search of the red Ford Focus is justified based on Rolenc's arrest and statements.  It is reasonable to believe the vehicle contained evidence of the offense of arrest.  The officers could reasonably believe they would find evidence related to the offense of drug trafficking in the red Ford Focus, such evidence would likely include the drugs Rolenc admitted were in her purse.  The officers did not exceed the scope of a reasonable search when they searched the purse first.  The purse was easily accessible and could conceal drugs as stated by Rolenc or other evidence of Rolenc's crime of arrest.

In the alternative, because Rolenc's arrest was constitutional, and no other licensed adults were present with authority to drive the vehicle, the search of the red Ford Focus was a valid inventory search.  Generally, "when taking custody of property such as a suspect's vehicle, law enforcement officers may conduct a warrantless search and inventory of the contents of the vehicle in order to protect the owner's property, to protect the police against claims of lost or stolen property, and to protect the police from potential danger."  ***United States v. Baldenegro-Valdez***, 703 F.3d 1117, 1125-26 (8th Cir. 2013) (**citing** *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)).  In a totality of the circumstances analysis, "inventory searches conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable."  *Id.*  Here, the inventory search of the red Ford Focus was

performed pursuant to policy with a detailed listing of the contents (Filing No. 30). **See United States v. Taylor**, 636 F.3d 461, 464 (8th Cir. 2011) (holding inventory search improperly conducted contrary to department procedures by failure to detail an extensive tool collection). Upon consideration,

**IT IS RECOMMENDED TO DISTRICT JUDGE JOSEPH F. BATAILLON** that:

Rolenc's motion to suppress (Filing No. 20) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) business days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 18th day of October, 2013.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge